# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAXIM CRANE WORKS, LP**, | ) | |
| Plaintiff, | ) ) ) ) ) | |
| v. | ) ) | Civil Action No. 15-597 |
| **SMITH TRANSPORTATION SERVICES, INC.** *also known as* SMITH-CARGO TRANSPORTATION, LLC**; SENTRY SELECT INSURANCE CO.; AGCS MARINE INSURANCE CO.** | ) ) ) ) ) ) ) ) | |
| Defendant. | | |

## OPINION

Maxim Crane Works, L.P. ("Maxim Crane") initiated this action against Smith Transportations Services, Inc. ("Smith") and two of Smith's insurers, Sentry Select Insurance Company ("Sentry") and AGCS Marine Insurance Company ("AGCS"). According to the complaint, Smith agreed to transport a load of crane counterweights, by truck, from Orlando, Florida to Freeport, Texas in November 2012 pursuant to a Master Service Agreement between Maxim Crane and Smith. (ECF No. 1 ¶¶ 2, 8, 30.) During the trip from Florida to Texas, the truck driver hauling Maxim Crane's equipment was involved in an accident (in Florida) that injured a third party, Danilo Lopez ("the Lopez Accident"). (Id. ¶ 35.) The Lopez Accident resulted in various personal injury and insurance coverage claims and litigation. (Id. ¶¶ 36-38.)

The instant case is one piece of this litigation. Maxim Crane seeks declaratory judgments that Smith, and its insurers Sentry and AGCS, are obligated to defend and indemnify it and to hold it harmless for any claims arising out of the Lopez Accident. (ECF No. 1 at 8-11 (Counts I and II).) Maxim Crane also asserts two breach of contract claims based upon Smith's alleged failure to

meet its indemnity obligations, or, alternatively, to secure adequate insurance, under the Master Service Agreement. (Id. at 11-13 (Counts III and IV); Id. ¶¶ 20-23.)

Defendants Sentry and AGCS separately answered the complaint. (ECF Nos. 10, 20.) Both insurance companies provided insurance to Smith at the time of the Lopez Accident. Sentry asserted a four-count counterclaim, in which it asks this court to issue various declarations about the applicability of and Smith's compliance with the Master Service Agreement and Sentry's obligations to Maxim Crane under it. (ECF No. 10 at 11-18.) AGCS answered, asserting affirmative defenses, but no counterclaims. (ECF No. 20.) Defendant Smith did not answer, but instead filed a motion to dismiss the three counts asserted against it in the complaint. (ECF No. 8.) Smith argues that Count I and Count III, which both seek to enforce the indemnity obligations imposed upon Smith in the Master Service Agreement, must be dismissed because the indemnity provisions in the Master Service Agreement are void under Pennsylvania law. (ECF No. 9 at 5-7.) Smith argues that Count IV must be dismissed because Maxim Crane is, as a matter of undisputed fact, a named additional insured on Smith's insurance policies with Sentry and AGCS, making it impossible for Maxim Crane to establish that Smith breached the Master Service Agreement by failing to obtain insurance. (Id. at 7-8.)

The court heard argument on the motion to dismiss at the initial scheduling conference and ruled that the motion was denied, with prejudice, with respect to Counts I and III, and denied without prejudice, with respect to Count IV. 1/20/2016 Minute Entry. The court indicated that a written opinion would be issued setting forth the court's reasoning and findings after the parties submitted certain supplemental information about the citizenship of the parties. Id.

I.   **Diversity Jurisdiction**

  A. **Legal Authority**

A federal court must always ensure that it has subject-matter jurisdiction over a cause of action, and, therefore, can raise concerns about the issue sua sponte. Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 76-77 (3d Cir. 2003); Carlsberg Resources Corp. v. Cambria Sav. and Loan Ass'n, 554 F.2d 1254, 1256–57 (3d Cir. 1977). Under 28 U.S.C. § 1332(a) "district courts ... have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States." 28 U.S.C. § 1332(a). In order for a court to exercise diversity jurisdiction over a case, there must be complete diversity of citizenship of adversarial parties, meaning that each defendant must be a citizen of a different state than each plaintiff. 28 U.S.C. § 1332(a)(1); Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010).

A corporation is a citizen of both its state of incorporation and principal place of business. 28 U.S.C. § 1332(c)(1). The citizenship of a limited liability company ("LLC") is determined by the citizenship of its members. Carden v. Arkoma Assoc., 494 U.S. 185, 189 (1990); Zambelli, 592 F.3d at 419-20. The citizenship of a partnership is determined by the citizenship of all its members. Zambelli, 592 F.3d at 419; Carden, 494 U.S. at 195-96 (the diversity determination for a limited partnership is based upon the citizenship of all partners, both general and limited, not solely upon the citizenship of the general partners). The principal place of business of an unincorporated entity is irrelevant to determining its citizenship. Johnson v. SmithKline Beecham Corp., 724 F.3d 337, 348-49 (3d Cir. 2013).

B. **Citizenship of Maxim and Smith**

The court informed the parties at the January 20, 2016 conference and argument that the complaint contained insufficient information to determine whether diversity jurisdiction exists in this case. 1/20/2016 Minute Entry. The court explained that plaintiff is a limited partnership, whose citizenship is determined by the citizenship of all its members. Carden, 494 U.S. at 195-96; Zambelli, 592 F.3d at 419. The court explained that the citizenship of the correctly-named defendant, Smith-Cargo Transportation, LLC, is determined by the citizenship of its members because it is an LLC. Carden, 494 U.S. at 189; Zambelli, 592 F.3d at 419-20; (ECF No. 9 at 1 n.1). Maxim and Smith were directed to submit supplemental information to the court about the parties' citizenship for purposes of determining diversity jurisdiction. Although Smith's filing was not timely made, following further order of court, the court received all required information from the parties. (ECF Nos. 28, 35.) For the reasons set forth below, this court finds that subject-matter jurisdiction exists in this case.

As an initial matter, the court is aware that the Court of Appeals for the Third Circuit recently loosened the requirements with respect to pleading the citizenship of defendant LLCs. Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 107-08 (3d Cir. 2015). In that decision, the court of appeals held that a plaintiff need not plead the citizenship of each member of a defendant LLC to establish diversity, as long as the plaintiff pleads that the defendant LLC is not a citizen of the same state as plaintiff. Id. The court stated that a plaintiff need not be "certain" about an LLC's citizenship, provided the plaintiff conducted "a reasonable inquiry" into the matter before filing suit. Id. Maxim Crane cannot claim the benefit of these new standards, however, because it alleged that Smith was a corporation, not an LLC. (ECF No. 1 ¶¶ 2, 8 (indicating that Smith-Cargo Transportation, LLC is a citizen of Florida because it is incorporated and headquartered there).)

**1. Citizenship of Maxim Crane Works, L.P.**

In the complaint, Maxim Crane contended that it is a citizen of Delaware and Pennsylvania because its general partner is Maxim Crane Works LLC, and Maxim Crane Works, Inc. is a member of Maxim Crane Works LLC. Maxim Crane asserted that because Maxim Crane Works, Inc. is incorporated in Delaware and has its principal place of business in Pennsylvania, it is a citizen of those two states. (ECF No. 1 ¶¶ 5-7.) Maxim Crane is a limited partnership, and it therefore takes on the citizenship of each of its partners. Carden, 494 U.S. at 195-96; Zambelli, 592 F.3d at 419. Although the complaint included information about Maxim Crane's general partner, it included no information about its limited partners. Although the complaint represented that one member of Maxim Crane Works, LLC was a corporation, it included no information about the other members, if any, of that LLC. Based upon these averments, the court could not determine the citizenship of Maxim Crane for purposes of diversity jurisdiction.

Maxim Crane's supplemental filing with respect to citizenship establishes that Maxim Crane is a citizen of Delaware and Pennsylvania for diversity purposes. (ECF No. 28.) The notice indicates that the named plaintiff, Maxim Crane Works, L.P., has one limited partner and one general partner, both of which are LLCs. (Id. at ¶ 2.) Both LLCs are wholly owned by the same corporation, and that corporation is incorporated in Delaware and has a principal place of business in Pennsylvania. (Id. ¶¶ 4-5.) Plaintiff is, therefore, a citizen of Delaware and Pennsylvania. Carden, 494 U.S. at 189; Johnson, 724 F.3d at 348-49; Zambelli, 592 F.3d at 419-20.

### 2. Citizenship of Smith-Cargo Transportation, LLC

In the complaint, Maxim Crane asserted that "Defendant, Smith Transportation Services, Inc., a/k/a Smith-Cargo Transportation, LLC ("Smith")" is a Florida corporation with its principal place of business in Sunrise, Florida. (ECF No. 1 ¶ 8.) In its brief in support of the motion to dismiss, defendant Smith points out that "[t]he correct name of the legal entity which entered into the Master Service Agreement with Maxim [Crane]… is 'Smith-Cargo Transportation, LLC'." (ECF No. 9 at 1 n.1.) The parties agreed at oral argument that Smith-Cargo Transportation, LLC is the proper defendant. The complaint, however, contained no information about who the members of the Smith LLC are or what their citizenship is, making it impossible for the court to determine whether diversity jurisdiction exists.

Smith's supplemental filing with respect to citizenship establishes that it is a citizen of Tennessee and Florida for diversity purposes. (ECF No. 35.) The notice indicates that Smith-Cargo Transportation, LLC has one member, which is a corporation that is incorporated in Tennessee and has its principle place of business in Florida. (Id. ¶¶1-4.)

### C. Conclusion

Because Maxim Crane and Smith are citizens of different States, this court has subject-matter jurisdiction over this matter. 28 U.S.C. § 1332(a); Zambelli, 592 F.3d at 420.

## II. Smith's Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a claim for relief in any pleading for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, a court must accept as true all well-pled factual allegations in the complaint, construe those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences from them in favor of plaintiff. Connelly v. Lane Const. Corp., No. 14-3792, --- F.3d ---, 2016 WL 106159, at *3-4, *7 (3d Cir. Jan. 11, 2016). Where it is clear that upon

proof of all allegations, the plaintiff would be unable to prevail under any theory of law, dismissal is appropriate. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

### A. Motion to Dismiss Counts I and III

Smith argues that Counts I and III must be dismissed because the indemnification provisions contained in the Master Service Agreement are void under Pennsylvania law. (ECF No. 9 at 5.) Count I seeks a declaratory judgment that Smith is contractually obligated to defend, indemnify, and hold harmless Maxim Crane for claims arising out of the Lopez Accident. (ECF No. 1 ¶¶ 42-48.) Count III is a breach of contract claim based upon Smith's alleged breach of the Master Service Agreement by refusing to defend, indemnify, and hold harmless Maxim Crane for such claims. (ECF No. 1 ¶¶ 55-58.)

The Pennsylvania law upon which Smith relies is title 74, section 8402 of the Pennsylvania Consolidated Statutes, which states:

> **(a) Public policy.--**The General Assembly finds and declares that, except as set forth in subsection (c), **indemnity provisions are against the public policy of the Commonwealth.**
> **(b) Effect.--**Except as set forth in subsection (c), **an indemnity provision is void.**
> **(c) Exception.--**This section shall not apply to a contract or agreement which concerns or affects transportation involving a railroad.

74 PA. CONS. STAT. § 8402 (emphasis added). There is no dispute that Pennsylvania law applies to the Master Service Agreement. (ECF Nos. 8 & 15 ¶ 4.) According to Smith, because the Master Service Agreement between Maxim Crane and Smith is a "motor carrier contract" under Pennsylvania law, any indemnity provisions found therein are void as against public policy. (ECF No. 9 at 6 (citing 74 PA. CONS. STAT. § 8401(1)).) Although Smith cites case law on general principles of statutory construction and the legislature's power to establish public policy, Smith does not cite a single judicial

7

decision interpreting or applying section 8402 in the manner it suggests, but rather limits its analysis to a "plain reading" of sections 8402 and 8401(1).

In opposition, Maxim Crane contends that "a full reading of the statutory text reveals that the anti-indemnity provision of the Pennsylvania Motor Carrier Statute only applies to contracts for the **intrastate** transportation of property **within the Commonwealth of Pennsylvania**, and not, as here, a contract for the transportation of property between Florida and Texas." (ECF No. 16 at 4 (emphasis in original).) Maxim Crane also does not cite a single judicial decision interpreting or applying section 8402 in the manner it suggests, but does include an extensive account of the pertinent Pennsylvania statutes.

The court was likewise unable to locate case law interpreting and applying section 8402. At oral argument counsel indicated that they were unaware of any written judicial opinion interpreting or applying the section. This court finds that a plain reading of the statute, and the other Pennsylvania statutes that are incorporated by reference, indicates that Maxim Crane is correct that Pennsylvania's anti-indemnity statute does not apply to this case because the travel at issue was interstate, not intrastate. Smith's motion to dismiss Counts I and III must therefore be denied.

To reiterate, section 8402 of Pennsylvania's Motor Carriers Statute states:

> **(a) Public policy.--**The General Assembly finds and declares that, except as set forth in subsection (c), **indemnity provisions are against the public policy of the Commonwealth**.
> **(b) Effect.--**Except as set forth in subsection (c), an **indemnity provision is void**.

74 PA. CONS. STAT. § 8402 (emphasis added). Other Pennsylvania statutes supply necessary definitions to this provision. Under section 8401, the term "**indemnity provision**" is defined as a provision that is contained in or affects a "**motor carrier transportation contract**" and "indemnifies or attempts to indemnify the promisee against liability for loss or damage resulting from intentional, reckless or negligent acts or omissions." 74 PA. CONS. STAT. § 8401. Section 8401 defines a "**motor

8

**carrier transportation contract**" as "[a]ny contract, agreement or understanding covering any of the following: (1) transportation of property for compensation by a **motor carrier**...." Id. The term "**motor carrier**" is defined, by reference to section 102 of the Pennsylvania Public Utilities Code, as "a common carrier by motor vehicle, and a **contract carrier by motor vehicle**." 66 PA. CONS. STAT. § 102. Although common carrier by motor vehicle is defined in section 102, a reader must refer to section 2501 of the Public Utilities Code for the definition of "**contract carrier by motor vehicle**." 66 PA. CONS. STAT. § 2501. Both kinds of carriers are defined as any person or corporation that transports persons or property "between points within this Commonwealth." 66 PA. CONS. STAT. §§ 102, 2501. Maxim Crane points out that these definitions, some of which are found in the Motor Carriers Statute and some of which are found in the Public Utilities Code, indicate that the anti-indemnity provision on which Smith relies does not apply to interstate commerce. (ECF No. 16 at 6 (citing 66 PA. CONS. STAT. § 104).) This court agrees.

A plain reading of section 8402, on which Smith singly relies, indicates that its provisions apply to contracts for transportation that occurs within Pennsylvania. There is no dispute that the contract at issue in this case was for transportation between Florida and Texas. Section 8402's anti-indemnification provisions do not apply to the present matter because this case does not involve a **motor carrier transportation contract** and Smith was not a **motor carrier**, within the meaning of applicable Pennsylvania law, at the time of the Lopez Accident.

For the foregoing reasons, Smith's motion to dismiss Counts I and III is therefore denied, with prejudice.

B. **Motion to Dismiss Count IV**

Counts III and IV are both breach of contract claims. In Court III, Maxim Crane accuses Smith of breaching the Master Service Agreement by refusing to defend and indemnify it pursuant to applicable insurance policies for claims arising out of the Lopez Accident. (ECF No. 1 ¶¶ 55-58.) In Count IV, Maxim Crane accuses Smith of breaching the Master Service Agreement by failing to obtain the insurance required under the agreement. (Id. ¶¶ 59-62.) Count IV is explicitly identified as "alternative claim for breach of contract for failure to insure." (ECF No. 1 at 12.)

Smith contends that Count IV must be dismissed because the documents Maxim Crane attached to its complaint establish that Smith obtained the insurance required under the Master Service Agreement, making it impossible for Maxim Crane to prevail on this breach of contract claim. (ECF No. 9 at 6-8.) In response, Maxim Crane argues that it explicitly pled Count IV as an alternative to Count III if it is eventually determined that the insurance policies that Smith obtained failed to provide the coverage promised to Maxim Crane in the Master Service Agreement. (ECF No. 16 at 7; see ECF No. 1 ¶¶ 59-62.)

The record reflects that there is a fundamental factual dispute about whether the insurance obtained by Smith covers Maxim Crane for damages arising out of the Lopez Accident. (ECF No. 9 at 8 n.2; ECF No. 16 at 7.) To that point, in its answer to the complaint, Sentry, one of Smith's insurers, states that "the Sentry Policy does not apply with respect to the subject accident in any manner whatsoever." (ECF No. 10 ¶ 42.) This coverage dispute has not yet been resolved, and until it is, Maxim Crane's alternative cause of action sounding in breach of contract for failure to obtain the proper insurance coverage under the Master Service Agreement is viable. The Federal Rules of Civil Procedure allow Maxim Crane to plead two breach of contract claims in the alternative. FED. R. CIV. P. 8(d)(2).

Smith's motion to dismiss Count IV is therefore denied, without prejudice.

## III. Conclusion

For the reasons set forth in this opinion, Smith's motion to dismiss, ECF No. 8, is denied, with prejudice, with respect to Counts I and III, and without prejudice, with respect to Count IV.

An appropriate order will be entered contemporaneously with this opinion.

Dated: February 26, 2016                    BY THE COURT,

                                            /s/ *Joy Flowers Conti*
                                            Joy Flowers Conti
                                            Chief United States District Judge